UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 94-621-CR-SEITZ/GARBER

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RAUL GRAJALES-LEMOS,

    Defendant.

_____/

## REPORT AND RECOMMENDATIONS

THIS CAUSE is before the Court by order of reference from United States District Judge Patricia A. Seitz. Pursuant to such reference, the Court has received defendant Raul Grajales-Lemos's Motion to Dismiss Indictment for Unreasonable and Unnecessary Delay (DE 82), as well as the government's response (DE 87) and Grajales's reply (DE 93). The Court has also received Grajales's Factual Supplement (DE 94) and the government's response thereto (DE 97). On March 8, 2012, the Court held a hearing on Grajales's motion. Upon due consideration and for the reasons set forth below, the Court respectfully recommends that Grajales's motion be DENIED.

I. **Factual Background, Procedural Posture, and Issues**

Grajales and five other co-defendants were indicted on various drug distribution and importation conspiracy charges in 1994 (a superceding indictment charging eight additional defendants was filed in June 1995). The conspiracies were alleged to have commenced in 1985 and to have continued until 1994. An arrest warrant was issued for Grajales in January 1995, about ten months after the filing of the indictment. In his motion and other filings, Grajales claims that he didn't became aware of the charges against him until 2001, when his cousin was arrested on the

superseding indictment and extradited to the United States. The government presented evidence at the March 8, 2012, hearing, however, that appears to establish otherwise. In any event, Grajales says he has lived openly, in the same home, in Cali, Colombia since 1988 and says that he has not traveled outside the country since 1991. The government, in the meantime, has never attempted to arrest Grajales, nor does it appear that the government ever placed Grajales on any sort of international watch list or in any databases that might alert the government if Grajales were to ever try to leave Colombia.

Grajales, some seventeen years after his indictment, now seeks to have the case against him dismissed on three grounds: (A) the lack of evidence against him; (B) the deprivation of his Sixth Amendment right to a speedy trial; and (C) the Court's authority under Federal Rule of Criminal Procedure 48 to dismiss an indictment for lack of prosecution. The government argues that, as an initial matter, the Court should decline to consider any of Grajales's motion based on the fugitive disentitlement doctrine. Alternatively, according to the government, even if the Court considers the issues raised, all of Grajales's arguments fail.

II.  **Discussion**

    A.  **Fugitive Disentitlement Doctrine and Grajales's Lack of Evidence Claim**

Preliminarily, the government claims that the fugitive disentitlement doctrine should bar Grajales from having the Court consider his motion to dismiss at all. According to the doctrine, those who have fled from the judicial process should not then be able to derive any benefit from it. *E.g.*, *Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998). A defendant will be considered a fugitive even if his whereabouts are known but his location is beyond the jurisdictional reach of the court. *E.g.*, *U.S. v. Barnette*, 129 F.3d 1179, 1185 n. 11 (11th Cir. 1997). As the government has pointed out, courts are reluctant to afford fugitive defendants the benefits of a potential legal victory when

those same defendants face no adverse consequences from unfavorable rulings. *E.g.*, *F.D.I.C. v. Pharaon*, 178 F.3d 1159, 1162 (11th Cir. 1999).

The Court has broad discretion, which the parties do not dispute, in determining whether or not to apply the fugitive disentitlement doctrine. *E.g.*, *Lynn v. U.S.*, 365 F.3d 1225, 1241 n. 29 (11th Cir. 2004). According to the cases cited by the parties and those researched by the Court, the doctrine is most commonly applied where fugitives are seeking either: appellate relief from a criminal conviction; civil relief; or some sort of adjudication on the merits of the criminal case against them. Here, Grajales suggests that, because of the extraordinary passage of time, the government likely no longer has the necessary evidence to proceed in prosecuting him. In urging the Court to refrain from applying the doctrine, Grajales submits that Judge Hoeveler's reasoning in *United States v. Noriega* should apply. 683 F. Supp. 1373 (S.D. Fla. 1988). The Court finds Grajales's reliance on that case misplaced. In *Noriega*, the court confronted a case involving extraordinary circumstances, none of which are present here. In allowing the fugitive defendant in that case to attack the validity of the indictment against him, Judge Hoeveler specifically noted the due process implications at issue and that the case was "fraught with political overtones." *Id.* at 1374-75. Thus, despite Noriega's fugitive status, Judge Hoeveler, in his discretion, determined that the "unique status of the defendant" warranted the court's turning its attention to the merits of his indictment. Such exceptional factors are absent from this case. Thus, insofar as Grajales is seeking to have his case dismissed because of a lack of evidence, the Court readily agrees with the government that the doctrine should be applied. That is, if Grajales wants to have the merits of his case addressed, he should submit to the jurisdiction of the court.

However, in urging the Court to apply the doctrine to the remainder of Grajales's arguments, the government has not cited a single case in which a court has relied on the doctrine where a

defendant was moving for dismissal on speedy trial grounds.[1] Thus, while extraordinary circumstances are lacking that would prompt the Court to turn its attention to the *merits* of Grajales's indictment, the issues raised by his speedy trial claims are a different matter altogether. Where more than seventeen years have elapsed between the defendant's indictment and the present, the constitutional issue raised seems to qualify as an "overriding policy concern," at least in this instance, and persuades the Court that Grajales's speedy trial claim should be afforded consideration, despite his fugitive status. *See U.S. v. Oliveri*, 190 F. Supp. 2d 933, 936 (S.D. Tex. 2001)(noting that the court would decline to address the fugitive defendant's motion where it found no "overriding policy concern" that would prompt it to do otherwise). Thus, the Court respectfully recommends that, to the extent that Grajales's is asking the Court to address the sufficiency of the evidence against him, his motion be denied without prejudice, allowing Grajales the opportunity to have the merits of the charges against him considered once he has submitted to the Court's jurisdiction.

    B.    **Sixth Amendment Right to a Speedy Trial**

With respect to his Sixth Amendment claim, Grajales sets forth the four factor analysis, also referred to as the "*Barker* inquiry," that courts rely on to determine whether an accused's right to a speedy trial has been violated:

---

[1] The issues addressed in criminal cases cited by the government to support applying the doctrine to the constitutional issues in this case are readily distinguishable. In a couple of cases, for example, the fugitive defendant sought some sort of pretrial determination of the merits of his or her case. *E.g.*, *U.S. v. Kashamu*, 656 F. Supp. 2d 863 (N.D. Ill. 2009) (defendant sought to have his case dismissed because a foreign court determined that the government had misidentified him in the indictment); *U.S. v. Adamov*, 2008 WL 1943550 (W.D. Pa. 2008) (defendant challenged the sufficiency of the evidence supporting his money laundering indictment). In another case, a fugitive defendant sought discovery in his stolen goods indictment. *U.S. v. Nabepanha*, 200 F.R.D. 480 (S.D. Fla. 2001). And still other cases, cited to by the government for the proposition that the doctrine should be applied in this case, addressed only speedy trial issues and not the application of the fugitive disentitlement doctrine. E.g., *U.S. v. Diacolios*, 837 F.2d 79 (2d Cir. 1988); *U.S. v. Salzmann*, 548 F.2d 395 (2d Cir. 1976).

>   (1) the length of the delay between the indictment and trial;
>
>   (2) the reason for the delay;
>
>   (3) whether the accused asserted his speedy trial right; and
>
>   (4) the prejudice to the accused caused by the delay.

*Barker v. Wingo*, 407 U.S. 514 (1972). The issue, then, is whether an evaluation of the facts at issue in this motion ultimately weighs in favor of Grajales or the government.

### 1.   **Length of Delay**

The first factor, the length of the delay, acts initially as a threshold inquiry. There is no debate that case law dictates that any delay exceeding one year is "presumptively prejudicial" and obligates the Court to analyze the remaining three factors. *Dogget v. U.S.*, 505 U.S. 647, 652 n. 1 (1992). The length of delay in this case, between indictment and Grajales's motion to dismiss, is some seventeen years. This is an extraordinarily protracted delay, which not only triggers the *Barker* inquiry, but which will also exacerbate any attribution of fault for the delay. That is, to the extent that the government is ascribed with causing the delay, this extreme length of time should weigh heavily in Grajales's favor and vice versa. *Dogget*, 505 U.S. at 657 (the court's "toleration of such negligence [causing the delay] varies inversely with its protractedness"). The impact of the delay is further elaborated on below, where relevant, in Sections 2. and 3.

### 2.   **Reason for the Delay**

In analyzing the reason for the delay, the second *Barker* factor, a court must address "whether the government or the criminal defendant is more to blame for that delay." *Doggett*, 505 U.S. at 651.

Grajales argues that the "government cannot offer any justifiable reason or excuse for not having timely brought [him] to trial." (DE 82, 8.) He posits that the government neglected to make any effort to secure his presence; and that instead, the government blindly relied on its presumed

inability to have Grajales extradited but never explored other means, such as diplomatic channels or seeking Grajales's voluntary extradition.[2] In any event, Grajales argues, he certainly can't be held accountable, or be considered a fugitive, for the time period between the indictment and when, in 2001, he alleges he first became aware of the charges against him.

The government's position, conversely, is that, because any efforts to have Grajales extradited would have been futile, the government can't be held accountable for the delay. That is, according to the government, it need not resort to extraordinary measures when doing so would only be in vain. The government summarizes its argument: "At best, the lack of an extradition process with Colombia for a fugitive in defendant's shoes fully justifies the government's delay in this case. At the very least, this factor should not count against the government, and should remain neutral." (DE 87, 16). Further, the government notes, the Court should conclude that, even if Grajales only found out about the charges in 2001, for the ten years during which he knew about the charges against him, between 2001 and the filing of his motion, Grajales has deliberately avoided prosecution by remaining in Colombia. This, the government argues, should weigh against Grajales.

Based on a newspaper article submitted by the government at the hearing before the Court, the Court finds it highly likely that Grajales has been aware of the indictment since 1994. (DE 109.) Thus, Grajales's contention that he should be held blameless for the period between 1994, the time of the indictment, and 2001, when he claims to have become aware of the charges, fails. Once Grajales became aware of the indictment, his decision to remain outside the jurisdiction weighs heavily against him. One of the cases cited by the government to support it's argument on this front is *United States v. Blanco* where the court made clear: "A person can be said to be a fugitive when,

---

[2] The parties do not dispute that, based on Grajales's Colombian citizenship, the new Columbian Constitution, created in 1991, and amendments thereto, and the time period involved in Garjales's charged criminal conduct, he is notextraditable.

while abroad, they learn that they are under indictment and make no effort to return to the United States to face charges." 861 F.2d 773, 779 (2d 1988). While the government in the *Blanco* case was more diligent in pursuing the defendant and the defendant in that case was more determined to conceal her whereabouts and identity, Grajales should nonetheless by deemed a fugitive once he became aware of the indictment in 1994. Because of his fugitive status, the Court finds Grajales largely culpable for the delay that he now complains about.

  As for any fault attributable to the government during this time period, the Court certainly finds the government's diligence lacking in that it doesn't appear that the government has made any attempts to at least keep track of Grajales or even simply enter his information into any one of a number of crime or border databases available. In this way, the government would have at least been aware if Grajales were to ever leave Colombia and would have been able to monitor any possible travel out of the country. However, in addition to indicating that Grajales should be penalized for his fugitive status, the *Blanco* case also persuades the Court that the government should not necessarily be held to blame for failing to take actions that ultimately would have been pointless. 861 F.2d at 778 (finding exactly that–the government has no duty to make extradition requests that would have been futile). To counter the government's protestations of futility, Grajales has put forth a number of conclusory statements regarding avenues that the government should have or could have pursued, rather than just throwing its hands up and assuming that all efforts were in vain. Grajales even faults the government for not asking him to voluntarily submit himself to the court's jurisdiction. However, Grajales has not provided any evidence that these efforts would have actually succeeded and has not convinced the Court that the proposed efforts would have resulted in, or even possibly have resulted in, securing Grajales's presence in the jurisdiction. In short, his suggestions are far too speculative to merit much of the Court's consideration. Furthermore, even if the Court

were to find that the government was grossly negligent in pursuing its case,[3] this finding would be tempered because of the inability to have Grajales extradited. Ultimately, Grajales's fugitive status for over seventeen years probably outweighs, but, at the very least, neutralizes, any negligence on the part of the government in pursuing its case.

### 3. **Assertion of the Right**

With respect to Grajales's inaction since learning of his indictment, he argues that his failure to assert his right was justified. First, he argues that, because he never took steps to conceal his whereabouts or his identity, he never affirmatively endeavored to avoid apprehension. This argument however is not persuasive–simply by remaining in Colombia, Grajales avoided apprehension.

Second, Grajales says he was under no duty to assert his right to a speedy trial because, by the time he found out about the charges, the "damage had already been done." (DE 82, 9.) Even if the Court were to find that Grajales didn't learn of the indictment until 2001, Grajales offers no case law, and the Court has found none, that would support this proposition. Nor does Grajales provide any evidence to support his conjecture regarding damage that "had already been done." The Court finds that Grajales's inaction to make any efforts to secure a timely trial once he claims to have learned of the charges against him, whether that was in 1994 or 2001, manifests a total disregard for his speedy trial rights. Grajales's inaction then, even if just for the last ten years, weighs heavily against him.

### 4. **Prejudice to the Accused Caused by the Delay**

The Eleventh Circuit has determined that, if the first three factors weigh heavily against the government, the defendant need not show actual prejudice to establish a violation of his right to a speedy trial. *U.S. v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006). The main thrust of Grajales's

---

[3]Grajales never claims that the government deliberately caused the delay.

argument is that, since, according to him, the delay was squarely attributable to the government and he did nothing to exacerbate the delay, he need not establish actual prejudice because of the extraordinary length of the delay. As the Court's analysis of the first three factors shows, however, the premises upon which Grajales's argument are based are unsound–Grajales was responsible for much, if not most, of the delay and, further, his failure to timely assert his speedy trial claim weighs heavily against him.

To the extent that Grajales has put forth a claim of actual prejudice, as he seems to have done in a footnote, that contention also fails. His conclusory allegations of prejudice due to: the death or unavailability of "many witnesses"; witnesses who cannot be located; "business documents" that have been discarded or destroyed; and the diminished or distorted recollections of the witnesses who are still available, are far too speculative to merit consideration. (DE 82, 10, n. 7.) Furthermore, even if Grajales were to urge the Court to consider the matter in terms of the "damage [that] had already been done" in 2001, it would be unrealistic for the Court to now reconstruct the record regarding trial prejudice that, if it existed, should have been brought to the Court's attention many years ago.

### C.   **Federal Rule of Criminal Procedure 48**

Grajales also claims that Rule 48 of the Federal Rules of Criminal Procedure provides a separate basis for the dismissal of charges in this case. Rule 48(b), "Dismissal," reads, in pertinent part: "The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . bringing a defendant to trial."

Grajales argues that, just based on the government's failure to notify him of the charges for seven years, the Court's refusal to exercise its discretion in favor of dismissal under Rule 48 would be unjustified.

The government maintains that, in order for the Rule 48 to apply, the defendant must be or have been in federal custody. Case law on this point is unambiguous: Rule 48(b) "clearly is limited to post-arrest situations." *U.S. v. Marion*, 404 U.S. 307, 319 (1971); *U.S. v. Blanco*, 861 F.2d 773, 780 (2d Cir. 1988) ("Rule 48(b) only applies to delays following arrest."); *U.S. v. Deleon*, 710 F.2d 1218, 1223 (7th Cir. 1983). Grajales claims that, because Rule 48(b) was amended in 2002, these prior decided cases are no longer applicable. Grajales's paraphrase of the former Rule 48(b) is highly misleading, however, and his argument here should be disregarded.[4] Further, contrary to Grajales's protestations, even after its 2002 amendment, at least one court has concluded, "Rule 48(b) comes into play only after a defendant has been placed under arrest." *U.S. v. Barken*, 412 F.3d 1131, 1136 (9th Cir. 2005).

III.     **Conclusion and Recommendations**

Upon careful consideration, the undersigned respectfully

RECOMMENDS that the defendant's motion be: **DENIED without prejudice** with respect to defendant Grajales's challenge to the sufficiency of the government's evidence against him, as more fully explained above; and **DENIED with prejudice** with respect to the speedy trial claims

---

[4]For reference, prior to the 2002 amendment, Rule 48(b) read: "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing the defendant to trial, the court may dismiss the indictment, information or complaint." Rule 48(b), in its entirety, now reads: "The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Grajales argues that because the modifier of "defendant" in the pre-2002 version, "who has been held to answer to the district court," was removed in the amended Rule 48(b), the rule was expanded to apply to defendants who are not in federal custody. Since that modifier was not associated with delays in "bringing a defendant to trial," but only with delays in the "filing of an information," Grajales's argument is wholly disingenuous. Furthermore, the Committee Notes make clear that all of the 2002 changes to the language of Rule 48 were intended to be stylistic only.

raised in his motion to dismiss.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have fourteen days from the date of this Report and Recommendation within which to file written objections, if any, with the Honorable Patricia A. Seitz, United States District Judge. See also 28 U.S.C. § 636. Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 27th day of March, 2012.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE